550 So.2d 1182 (1989)
Craig SOLOMON D/B/a Golden Advertising and Harry R. "Benji" Dubell D/B/a Golden Advertising, Appellants,
v.
BETRAS PLASTICS, INC., Appellee.
No. 88-1710.
District Court of Appeal of Florida, Fifth District.
November 2, 1989.
*1183 David A. Vukelja, Ormond Beach, for appellants.
Sylvan A. Wells of Sylvan A. Wells, P.A., Daytona Beach, for appellee.
PER CURIAM.
AFFIRMED.
DAUKSCH and COWART, JJ., concur.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
The issue on this appeal is whether a $14,793.90 debt was incurred by Solomon and Dubell personally or as a legitimate debt of the appellants' wholly-owned corporation (Craben Enterprises, Inc.). The result turns on whether Betras Plastics, Inc., was put on notice as to whom it was doing business with.
Dubell and Solomon incorporated in December, 1984, to sell advertising specialties under the trade name Golden Advertising Specialties, and dealt with one Richard Kaye, Betras's local factory representative. Golden Advertising routinely purchased plastic mugs from Betras (principal offices in South Carolina), selling them in turn to various customers.
The record shows that the corporate name "Craben Enterprises, Inc.," appeared above the trade name on Golden Advertising Specialties' business card, on its three styles of purchase order (in small print), and on its price list. At the top of all eighteen checks written to the order of Betras, beginning January 15, 1985, was the name "CRABEN ENTERPRISES, INC. D/B/A GOLDEN ADVERTISING SPECIALTIES." Both Dubell and Solomon signed these checks without any representative language included. A July 3, 1986, letter from Dubell to Betras's accounting department regarding invoice corrections listed "Craben Enterprises, Inc.," on the letterhead, and also had the words "Vice President" typed in beneath Dubell's signature. Betras's billing statements, however, were made out to "Golden Advertising" only.
In August of 1987, Golden Advertising attempted to purchase merchandise from Betras, but Betras refused to extend further credit without a promissory note for the past amounts due, signed individually by Dubell and Solomon. Obviously, Betras sought the execution of the note in order to render Dubell and Solomon personally liable. Dubell and Solomon refused to sign such a note. Betras filed a complaint on November 23, 1987, against Dubell and Solomon d/b/a Golden Advertising. Count I concerned an open account and Count II claimed an account stated. Betras alleged no wrongful conduct on the part of Dubell or Solomon. On December 15, 1987, a notice of fictitious name was registered, showing Craben Enterprises, Inc., as doing business as Golden Advertising Specialties. Dubell and Solomon's answer and affirmative defenses denied any personal debt to Betras.
At trial, Richard Kaye testified that he accepted orders from Dubell and Solomon as "Golden Advertising" and that he learned that Craben Enterprises, Inc., was responsible for the debt to Betras only when he presented Dubell and Solomon with the promissory note. Kaye testified that he did not personally receive the purchase orders from Golden Advertising Specialties, nor did he receive the checks, because they were sent to Betras's principal office in South Carolina.
Dubell and Solomon testified that at their initial meeting with Kaye they gave him a business card and a sample of the purchase order they would be using, both of which included the corporate name. Additionally, they testified that the first purchase order and check were hand-delivered to Kaye. The trial court ultimately rendered a decision in favor of Betras which held Dubell and Solomon personally liable for the accumulated debt.
The appellants argue that the trial court misconstrued the purpose of and penalty for noncompliance with the Florida fictitious name statute. Additionally, the appellants submit that the documentary evidence clearly disclosed that Craben Enterprises, Inc., was the real party in interest *1184 where Betras's employees received these documents over a two and one-half year period. Dubell and Solomon urge that at no time did Betras plead that Craben was a corporation formed to mislead creditors or that it was the "alter ego" of Dubell and Solomon.
Betras maintains that until Dubell and Solomon refused to sign the promissory note, it had no knowledge it was dealing with a corporate entity. Betras also echoes the trial court's finding that the "small print" and absence of corporate signatures go to the fact that Dubell and Solomon were really operating as individuals. Finally, Betras appears to suggest that Dubell and Solomon misled creditors by hiding the corporate entity.
Where a contracting party knows the identity of a principal for whom an agent claims to act, the principal is deemed to be disclosed. A principal must be disclosed at the time a contract offer is accepted, because subsequent knowledge of a principal has no legal effect as to that contract. Where there is no competent evidence to show that a contracting party knew or should have known who the principal was at the time a contract was executed, the agent will be legally responsible for the contract debt. Van D. Costas, Inc. v. Rosenberg, 432 So.2d 656, 658-659 (Fla. 2d DCA 1983); Panama Realty, Inc. v. Robison, 305 So.2d 34, 36 (Fla. 1st DCA 1974), cert. denied, 320 So.2d 395 (Fla. 1975). Furthermore, where a contract creditor is a corporation, the corporation is charged with notice of all transactions involving those through whom it does business. The failure of employees within a corporation to advise one another regarding transactions that ultimately affect the corporation is treated as the fault of the corporation. St. Petersburg Coca-Cola Bottling Co. v. Cuccinello, 44 So.2d 670, 676 (Fla. 1950).
Signatures pertaining to negotiable instruments are interpreted under section 673.403(3), Florida Statutes (1987).[1] Where no negotiable instrument is involved, parol evidence is admissible to show the capacity in which a defendant signed. See Plotch v. Gregory, 463 So.2d 432, 435 (Fla. 4th DCA 1985). In the latter instance, the signature of a corporate officer that appears to be executed in a representative capacity is not, standing alone, conclusive of that interpretation. Roy v. Davidson Equipment, Inc., 423 So.2d 496 (Fla. 4th DCA 1982). Where there is an omission of any reference to an individual's representative capacity, this is also inconclusive, standing alone, regarding personal liability. Puckett v. Codisco, Inc., 440 So.2d 596 (Fla. 2d DCA 1983).
Furthermore, it is well settled that a corporate veil may not be pierced absent a showing of improper conduct. Improper conduct, at least in the contract sense, means the organization or use of a corporation to mislead creditors or to perpetrate a fraud upon them. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984); Steinhardt v. Banks, 511 So.2d 336 (Fla. 4th DCA), review denied, 518 So.2d 1273 (Fla. 1987). Under the basic alter ego theory (confusion of identities), the personal affairs of the shareholder become confused with the business affairs of the corporation. Individual liability under this theory rests in part on the fact that a shareholder has taken it upon himself to disregard the corporate entity.[2] After a showing of confusion of identities, there must additionally be a showing of improper conduct. A simple showing that a corporation is an alter ego would not, without a concomitant showing of wrongdoing, be sufficient to pierce the corporate veil. Finally, the demonstrated improper conduct must be the *1185 proximate cause of the alleged loss.[3]
In the instant case, the documentary evidence speaks for itself. The first purchase order was sent with a check that expressly advised Betras that Craben Enterprises, Inc., was doing business as Golden Advertising Specialties. This was sufficient to place Betras on actual notice that it was dealing with a corporation. For each contract that followed, Betras had actual knowledge of the corporation. The corporate name was placed on all documents (small print on some of the documents notwithstanding) and there was never any attempt by Solomon and Dubell to conceal the corporate existence. The testimony of Richard Kaye, if completely believed by the trial court, only showed that Kaye did not know of the corporation, even if everyone else at Betras did. In addition, Betras never alleged in the pleadings that it wished to set aside the corporate existence, nor did it show any improper conduct on the part of Solomon and Dubell or Craben sufficient to pierce the veil. Finally, any significance that the trial judge may have attached to Craben's initial noncompliance with section 865.09, Florida Statutes (1987), would have been misplaced. The purpose of the fictitious name statute is to provide record notice of the real party in interest to those who currently or potentially may deal with a business. It does not prevent a non-complying business from defending an action in a state court.
The uncontroverted evidence shows that Betras Plastics, Inc., had actual knowledge that Craben Enterprises, Inc., was doing business as Golden Advertising Specialties, and nothing was pleaded or proven by Betras which would justify setting aside Craben's corporate existence. I would reverse.
NOTES
[1] Under this section, a principal is not liable unless an instrument names the principal and clearly shows that the signature is made on the principal's behalf. See, e.g., Provecasa v. Gemini Associated Corporation, 532 So.2d 1106 (Fla. 3d DCA 1988); Medley Harwoods, Inc. v. Novy, 346 So.2d 1224 (Fla. 3d DCA 1977); MJZ Corporation v. Gulfstream First Bank and Trust, N.A., 420 So.2d 396 (Fla. 4th DCA 1982).
[2] "Mere instrumentality" theories of piercing the veil deal with parent/subsidiary situations as described by this court in Kelly v. American Precision Industries, Inc., 438 So.2d 29 (Fla. 5th DCA 1983), petition for review denied, 447 So.2d 885 (Fla. 1984).
[3] A failure to follow corporate formalities (i.e., properly issuing stock or keeping records) is not, by itself, a sufficient ground upon which to base individual shareholder liability. This is because a loss is normally not caused by the failure to follow corporate formalities. Riley v. Fatt, 42 So.2d 769 (Fla. 1950); Eagle v. Benefield-Chappell, Inc., 476 So.2d 716, 719 (Fla. 4th DCA 1985).